WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Hadley Hassan,<br><br>    Petitioner,<br><br>v.<br><br>M. Gutierrez,<br><br>    Respondent. | No. CV-23-00510-TUC-JCH<br><br>**ORDER ADOPTING R&R**<br>**AND DISMISSING PETITION** |

Pro se incarcerated Petitioner, Steven Hadley Hassan, filed a "Petition Under 20 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody" (the "Petition"). Doc. 1. Respondent M. Gutierrez, Complex Warden for the United States Penitentiary in Tucson ("USP-Tucson"), filed a Response (Doc. 10), and Petitioner filed a Reply (Doc. 11). On August 7, 2024, Magistrate Judge Lynette C. Kimmins issued a Report and Recommendation ("R&R") in which she recommends this Court deny the Petition. Doc. 12. Petitioner filed an Objection to the R&R.[1] Doc. 13. For the following reasons, the Court will overrule Petitioner's objections, adopt Judge Kimmins's R&R in full, and dismiss the Petition.

**I.  Factual Background**

The R&R provided a succinct factual background that Petitioner has not objected to. Doc. 12 at 1–2. As such, the Court will adopt the R&R's factual findings in full. Relevant here, Petitioner is serving a 480-month sentence for Production of Child Pornography

---

[1] Respondent did not file a Reply to Petitioner's Objection.

Transported into the United States under 18 U.S.C. § 2251(c). Doc. 10 at 3–4. Petitioner's current projected release date is July 13, 2052, after which he will be on supervised release for life. *Id.* Petitioner was housed at USP-Tucson at the time he filed the Petition. *Id.* at 4. Petitioner is currently serving his sentence at FCI-Marianna in Florida. *Id.* In the Petition, Petitioner alleges the First Step Act ("FSA") violates (1) the Due Process Clause of the Fifth Amendment because inmates have a protected liberty interest in FSA time credits ("FTCs") and (2) the Equal Protection Clause of the Fifth Amendment because inmates who have been convicted of certain crimes are precluded from earning FTCs to shorten their sentence. *See generally* Doc. 1.

## II.     The First Step Act

The FSA was enacted December 21, 2018, and aims, in part, to address sentencing reform. It instructs the Attorney General to develop a risk and needs assessment system (the "System") to assign prisoners to recidivism reduction programs. *See* 18 U.S.C. § 3632(a). As part of the System, Congress outlined a series of incentives and rewards to encourage prisoners to engage with the recidivism reduction programs. § 3632(d). These incentives include increased phone and visitation privileges and transfers to preferred institutions, among others. § 3632(d)(4).

Particularly relevant here is the provision allowing prisoners to earn FTCs toward prerelease custody or supervised release. *Id.* The pertinent statutory language is as follows:

> A prisoner, *except for an ineligible prisoner under subparagraph (D)*, who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>
> > (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>
> > (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

§ 3632(d)(4)(A) (emphasis added). Subparagraph D provides that "[a] prisoner is ineligible to receive time credits under this paragraph if the prisoner is serving a sentence for" any one of 68 enumerated offenses. § 3632(d)(4)(D). This list of disqualifying offenses includes convictions under 18 U.S.C. § 2151 "relating to the sexual exploitation of children." § 3632(d)(4)(D)(xxxix).

**III.     Report and Recommendation Standard of Review**

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). If an objection is made, the Court "must review the magistrate judge's findings and recommendations de novo." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). The Court is obligated to review only the specific portions of the report, proposed findings, or recommendations objected to. *See* § 636(b)(1). If, following review, "the district court is satisfied with the magistrate judge's findings and recommendations it may in its discretion treat those findings and recommendations as its own." *Morris v. Shin*, No. CV 20-322, 2023 WL 6248830, at *7 n. 5 (D. Ariz. Sept. 26, 2023) (quoting *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995)).

**IV.     Analysis**

The Petition was filed under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody. Section 2241 allows an incarcerated individual to petition the Court to determine whether their detention is lawful. Petitioner alleges his sentence is unlawful because the provision of the FSA that disqualifies persons convicted under any of the 68 enumerated offenses, including 18 U.S.C. § 2151, is unconstitutional. *See* Doc. 1.

**A. Respondent**

USP-Tucson Complex Warden Gutierrez is the named Respondent. While Gutierrez was the correct Respondent at the time of filing because Petitioner was housed at USP-Tucson, he is now housed at FCI-Marianna. Doc. 10 at 4. Thus, the acting warden of FCI-Marianna, B. Wingfield, should be substituted as Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) ("The federal habeas statute straightforwardly provides that the

proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" (alteration in original) (quoting 28 U.S.C. § 2242)).

However, because Petitioner filed the Petition while he was housed at USP-Tucson, it is still properly before this Court. "[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change." *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990) (quotation omitted).

### B. Exhaustion of Administrative Remedies

Typically, courts require a habeas petitioner to exhaust his administrative remedies before filing for relief under 28 U.S.C. § 2241. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986). The purpose of this requirement is to protect administrative agency authority and promote efficiency. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). But there are exceptions to this requirement. In particular, a prisoner is not required to exhaust his administrative remedies before filing a petition under 28 U.S.C. § 2241 when doing so would be futile. *Laing v. Ashcroft*, 370 F.3d 994, 1000–01 (9th Cir. 2004).

Respondent argues that to have exhausted his administrative remedies, Petitioner must have "gone through submissions at all applicable levels of review in the BOP's Administrative Remedy Program," and because Petitioner has not done this, the Court should dismiss the petition. *See* Doc. 10 at 5–7. Petitioner does not contend he exhausted these remedies. Doc. 12 at 2. Instead, Petitioner argues that because it is not within the BOP's authority to amend the First Step Act, and only the judiciary has the authority to interpret the constitutionality of statutes, he has no available administrative remedies and as such, exhausting them would be futile. *See* Doc. 11 at 1–2. Respondent urges the Court to find the futility exception does not apply, as "the Supreme Court has already rejected futility as a means to circumvent the administrative exhaustion requirement." Doc. 10 at 6 (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001)). *But see Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005) ("*Booth* made quite clear that the statutory language does not require exhaustion when no pertinent relief can be obtained through the internal process.").

The R&R declined to reach these arguments, "finding it most expeditious to resolve

[Petitioner's] claims on the merits." Doc. 13 at 3. This Court agrees. Because the exhaustion requirement was judicially created and not a statutory requirement, the Court may "excuse the faulty exhaustion and reach the merits." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990); *see also Garrido v. Warden*, No. 22-cv-00991, 2023 WL 2587894, at *13 (E.D. Cal. Mar. 20, 2023). As such, the Court will exercise its discretion and analyze the Petition on its merits.

### C. First Objection – Equal Protection

Petitioner first argues against the R&R's conclusion on the basis that it overlooked the possibility of an equal protection violation under rational basis scrutiny. Doc. 13 at 2–3. Petitioner acknowledges inmates are not a suspect or quasi-suspect class entitled to heightened scrutiny. *Id*. Instead, Petitioner argues that "all federal inmates who are incarcerated because of a criminal conviction" are similarly situated, and excluding only those who have committed certain crimes does not pass even the presumptively constitutional rational basis standard. *Id.* at 3–4. Despite Petitioner's claim to the contrary, the R&R addressed this standard and concluded there is a clear rational basis for preventing those convicted of certain crimes from earning FTCs. Doc. 12 at 4.

As an initial matter, Petitioner's assumption that all federal inmates are similarly situated is inherently flawed. "An equal protection claim will not lie by 'conflating all persons not injured into a preferred class receiving better treatment' than the plaintiff." *Thorton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005) (quoting *Joyce v. Mavromatis*, 783 F.2d 56, 57 (6th Cir. 1986)). Here, Petitioner asserts he has an equal protection claim because some inmates have the opportunity to earn credits while some do not. He ignores, however, that all crimes are not created equal. Included within the list of 68 offenses that make an inmate ineligible to earn FTCs are "some of the most serious crimes under federal law." *United States v. Powell*, No. 11-cr-205, 2023 WL 5489030 at *11 (E.D. Va. Aug. 24, 2023). The list includes, for example, offenses relating to biological and chemical weapons (18 U.S.C. §§ 175 et seq., §§ 229 et seq.), genocide (18 U.S.C. §§ 1111 et seq.), and terrorist attacks (18 U.S.C. §§ 1992). More pertinently, the list prohibits

the earning of FTCs by those inmates who are perhaps *most* similarly situated to Petitioner: those convicted of sex crimes. *See* 18 U.S.C. §§ 3632(d)(4)(D)(xxxvii)-(xliii). The simple fact that Petitioner may be housed in a federal detention center with individuals who have not committed one of these excluded crimes does not automatically make them similarly situated for the purposes of an equal protection analysis, and "[e]vidence of different treatment of unlike groups does not support an equal protection claim." *Thorton*, 425 F.3d at 1168.

Even if the Court assumes all federal inmates are similarly situated for the purpose of an equal protection analysis, it is well established that there is a rational basis for treating certain crimes as being more serious than others. Because the Petitioner is not a member of a suspect class and his claim does not involve a fundamental right, the difference in FTC eligibility need only be supported by rational basis. *Armour v. City of Indianapolis*, 566 U.S. 673, 679 (2012). As the R&R reasons, restricting certain offenders from eligibility to earn FTCs has a number of legitimate rational bases, including "the particular obscenity of the offense, the need to protect society, and the need to deter future criminal conduct, among others." Doc. 12 at 4 (quoting *Powell*, 2023 WL 5489030, at *12 (denying a defendant's claim that the exclusion of certain offenders from the ability to earn FTCs violated the Equal Protection Clause)); *see also Fett v. Baldwin*, No. 18-CV-3306, 2019 WL 1440249, at *3–4 (C.D. Ill. Apr. 1, 2019) (denying a defendant's equal protection claim because the crimes that prevented prisoners from being eligible to earn full sentence credits "may rationally be perceived as more violent, dangerous, or serious . . . thus justifying the reduction in credit"); *Tyson v. Baldwin*, No. 19-cv-648, 2020 WL 469663, at *3 (S.D. Ill. Jan. 29, 2020) ("There is a rational basis for treating [certain] crimes differently than other crimes . . . because these crimes could be considered more violent, serious, or dangerous than other crimes."). Differentiating between classes of offenders is thus highly distinguishable from the "irrational classes" of which Petitioner gives examples in his Objection. Doc. 13 at 4–5. Because there is a clearly established rational basis for preventing certain offenders from earning FTCs towards the reduction of their sentences,

Petitioner's equal protection claim fails.

### D. Second Objection – Due Process

Petitioner next objects to the R&R's finding that because Petitioner has not lost any FTCs he has already earned and there is no liberty interest in the opportunity to earn FTCs, he has no due process claim. *See* Doc. 12 at 4–5. Instead, Petitioner equates FTCs to other congressionally-created "good time credits," which are "given to all federal inmates for good behavior, and can only be taken away by due process in a disciplinary hearing." Doc. 13 at 6. He claims that for both these types of credits, the government has created a right to earn them and accordingly, has also created an expectation of the opportunity to earn early release. *Id.* at 6–7. To Petitioner, it is this expectation that creates a liberty interest that cannot be taken without due process. *Id.* at 7.

As a threshold matter, Petitioner is mistaken that the good time credits outlined in 18 U.S.C. § 3624(b) (which the Court assumes are the ones to which he is referring) are available to all prisoners. *See, e.g.*, § 3624(b)(1) (excluding prisoners serving a life sentence). But, more importantly, these two types of credits—good time credits and FTCs—cannot be equated. This is because the statutory text that creates the right for prisoners to earn FTCs also *explicitly excludes* those who are incarcerated for the offenses outlined in 18 U.S.C. § 3632(d)(4)(D): "A prisoner, *except for an ineligible prisoner under subparagraph (D)*, who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows . . . ." (emphasis added). To quote Respondent, "[t]here is no vagueness in the statutory text of the FSA." Doc. 10 at 7. Section 3632 could not have given Petitioner an "expectation" of the possibility of release because it explicitly excludes him from the ability to earn FTCs. It is expressly different from the statutes in the cases Petitioner cites that created a right to or expectation of the opportunity to earn early release. *See Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974) (holding that where a state statute "created the right to good time and itself recogniz[ed] that its deprivation is a sanction authorized for major misconduct," prisoners were entitled to due process before that right was abrogated); *Greenholtz v. Inmates of Neb.*

*Penal & Corr. Complex*, 442 U.S. 1, 7–12 (1979) (holding that while the mere possibility or hope of obtaining parole is not protected by due process, statutes can give rise to due process protections by use of language mandating certain procedures). It follows that if the liberty interest is tied to the creation of an expectation of early release, then no liberty interest has been created, and Petitioner's due process rights have not been violated. *See Greenholtz*, 442 U.S. at 7 ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.").

### E. Third Objection – Ex Post Facto

In his Objection, Petitioner raises for the first time the argument that the deprivation of the right to earn FTCs constitutes an ex post facto penalty. Doc. 13 at 9–10. While the Court has the discretion to consider arguments raised for the first time in an objection to an R&R, it is not required to do so. *See Brown v. Roe*, 279 F.3d 742, 744 (9th Cir. 2002). As such, the Court declines to address Petitioner's arguments at length. Petitioner's claim, however, would fail even if properly raised because an ex post facto penalty is "the application of any new punitive measure to a crime already consummated." *Lindsey v. Wash.*, 301 U.S. 397, 401 (1937); *see also Weaver v. Graham*, 450 U.S. 24, 31 (1981) ("The critical question is whether the law changes the legal consequences of acts completed before its effective date."). Here, Petitioner's sentence would be the same as it is now if § 3632 had never been enacted. It does not impose any additional punishment and thus is not an unconstitutional ex post facto penalty.

### V. Order

Accordingly,

**IT IS ORDERED** that B. Wingfield, Acting Warden for FCI-Marianna, should be substituted as Respondent.

**IT IS FURTHER ORDERED ADOPTING IN FULL** the Report and Recommendation (Doc. 12).

**IT IS FURTHER ORDERED DENYING** the Petition (Doc. 1). The Clerk of the Court shall enter judgment and close this case.

Dated this 9th day of October, 2024.

_____
John C. Hinderaker
United States District Judge